IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN (WATERLOO) DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 18-2045-CJW |
| Plaintiff, | ) | |
| vs. | ) | |
| MATTHEW NEBERMAN, | ) | |
| | ) | GOVERNMENT'S SENTENCING |
| Defendant. | ) | MEMORANDUM |

The government submits the following memorandum to address issues to be decided by the Court at sentencing. In the event that the Court determines the cross-references under USSG §2G3.1(c)(1) and §2G2.2(c)(1) do not apply, the government alternatively moves for an upward variance.

**TABLE OF CONTENTS**

I.   Summary of the Case ........................................................................................ 2

II.  The Cross-Reference Under USSG §2G3.1(c)(1) Should Be Applied ................ 2

III. The Cross-Reference Under USSG §2G2.2(c)(1) Should Be Applied ................ 9

IV.  The Court Should Impose the Proposed Special Condition of
     Supervised Release Prohibiting Defendant from Using and Possessing
     Alcohol and from Entering Bars or Taverns ..................................................... 10

V.   In the Event the Court Determines the Cross-References Under USSG
     §2G3.1(c)(1) and §2G2.2(c)(1) Do Not Apply, the Court Should Impose
     an Upward Variance Based on the Factors Under 18 U.S.C. § 3553(a),
     and a Downward Variance Is Not Appropriate ............................................... 15

## I. SUMMARY OF THE CASE

A.  Witnesses: None at this time.

B.  Exhibits: None at this time.

C.  United States Sentencing Guidelines Calculation: The government agrees with the guidelines calculation in the Presentence Investigation Report.

## II. THE CROSS-REFERENCE UNDER USSG §2G3.1(c)(1) SHOULD BE APPLIED

USSG §2G3.1(c)(1) states:

If the offense involved transporting, distributing, receiving, possessing, or advertising to receive material involving the sexual exploitation of a minor, apply §2G2.2 (Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping, Soliciting, or Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic; Possessing Material Involving the Sexual Exploitation of a Minor).

Here, the issue is whether defendant's conduct constituted "advertising to receive material involving the sexual exploitation of a minor."

The cases the government has found involve provisions with different language, particularly the "notice or advertisement" provision in 18 U.S.C. § 2251. Section 2251(d) provides in pertinent part:

(1) Any person who, in a circumstance described in paragraph (2), knowingly makes, prints, or publishes, or causes to be made, printed, or published, any notice or advertisement seeking or offering—

   (A) to receive, exchange, buy, produce, display, distribute, or reproduce, any visual depiction, if the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct . . . .

This statute includes the language "notice or advertisement," and one of the alternatives is "to receive" child pornography.

In *United States v. Sewell*, 513 F.3d 820 (8th Cir. 2008), the court upheld a conviction under the "notice" and "distribute" provisions of § 2251(d)(1)(A), where the defendant used the peer-to-peer file sharing software Kazaa:

> The context clearly demonstrates that Sewell was offering to distribute child pornography. Kazaa's purpose is to allow users to download each other's files, and the purpose of the descriptive fields is to alert interested users to the content of downloadable files. A keyword search of descriptive fields in Kazaa does not download the file. The search simply creates a list of downloadable files that contain the keyword in the file's descriptive fields. This list then displays the full descriptive fields for each listed file. Based on the notice the searcher has now been given regarding what other users are offering, the searcher can then choose to download the child pornography to his computer. In the context of the Kazaa program, placing a file in a shared folder with descriptive text is clearly an offer to distribute the file.

*Id.* at 822. While *Sewell* involved § 2251(d)(1)(A), it was in the context of an offer to distribute child pornography.

In *United States v. Stulock*, 308 F.3d 922 (8th Cir. 2002), the court upheld the application of an enhancement, formerly in USSG §2G2.2(b)(5), that applied "[i]f a computer was used for the transmission of the material or a notice or advertisement of the material." *Id.* at 925.

> In 1999, federal and state law enforcement officers raided a company engaged in distributing child pornography on the internet. Using a list of customer names and email addresses recovered from that company, the agents emailed offers to sell pornographic materials to Stulock and many other individuals included in the list. Stulock responded to the offer with a request for a list of materials containing "mostly girls, age 7-14, hardcore."

3

*Id.* at 924. While the investigation started with a company, the advertisement at issue was by e-mail to the defendant:

> An undercover officer used a computer to transmit an advertisement of the material to Stulock. Stulock received this advertisement via computer. All details of the transaction were negotiated through email. Only the final payment and delivery were, of necessity, accomplished through the postal service. Accordingly, we find no error in the district court's findings of fact or its application of §2G2.2(b)(5).

*Id.* at 925.

In *United States v. Caniff*, 916 F.3d 929 (11th Cir. 2019), the court upheld a conviction under the "notice" and "receive" provisions of § 2251(d)(1)(A), where the defendant communicated with an undercover officer:

> Although Mandy told Caniff several times at the outset of their text messaging that she was thirteen years old, Caniff's text messages to Mandy turned sexual and eventually became quite explicit and graphic. Caniff also sent Mandy several pictures of his penis and asked her to send him pictures of her genitalia and of her masturbating. When Mandy asked if she could get in trouble, Caniff responded that "[t]he only one of us the [sic] could get in trouble would be me." (Gov't ex. 3 at 3.) Eventually, Mandy agreed to have sex with Caniff.

*Id.* at 931. The court decided the case based on the "notice" provision; while it did not address what constitutes an "advertisement," it discussed the defendant's argument that an "advertisement" required "public notice":

> Caniff points out that Congress proscribed "any notice or advertisement," and advertisement is commonly defined as "public notice." We have no occasion here to address what constitutes an "advertisement" for purposes of § 2251(d)(1). But Caniff's contention—that an "advertisement" is a "public notice"—cuts against his position because it implies that a simple notice without the adjective "public" is still a notice, needing only the addition of a public audience to be elevated to an advertisement. If the common, ordinary use of "notice" inherently requires a public component, as Caniff argues, there would be no need ever to modify notice with the adjective "public."

4

> Furthermore, if both notice and advertisement mean "public notice," then these two terms are largely redundant, and we are reluctant to conclude that two separate words in a statute are redundant.

*Id.* at 935. The court stated that "Congress must have, instead, meant that each of those terms—"notice or advertisement"—had an independent meaning." *Id.*

In *United States v. Stoune*, 694 F. App'x 688 (11th Cir. 2017) (unpublished), the defendant pled guilty to charges including "advertising to receive and produce visual depictions involving the use of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2251(d)(1)(A), (d)(2)(B) . . . ." *Id.* at 689. The defendant "engaged in a series of sexually explicit text- and Internet-based conversations with 'Emily Shannon,' a fictitious 14-year-old deaf girl." *Id.* "As the conversations continued, Stoune requested that Emily send pictures of herself, and he sent Emily numerous photos and videos of his genitalia." *Id.* However, the court's opinion involved other issues, and it did not address whether the defendant's conduct implicated the "notice" or "advertisement" provisions.

In *United States v. Worden*, 646 F.3d 499 (7th Cir. 2011), the defendant pled guilty to advertising child pornography under § 2251(d)(1) based on the following conduct:

> Worden was arrested for engaging in sexually explicit online chats with "Emily," a person whom he believed to be a 14–year–old girl living in Vermont. Worden emailed Emily numerous pictures and videos of minors engaging in sexually explicit conduct, asked Emily to send him sexually explicit photos of herself, offered to ship Emily a webcam to facilitate their communications, and masturbated in front of his webcam while he was online with Emily. Worden told Emily that he had shared sexually explicit photos with others online. He also suggested that he travel to Vermont to have sex with Emily and to rape girls that Emily did not like. Emily, in actuality, was an

5

undercover police officer working for the Vermont Internet Crimes Against Children Task Force.

*Id.* at 501. However, the court's opinion involved other issues, and it did not address whether the defendant's conduct implicated the "notice" or "advertisement" provisions.

Regarding the argument that an "advertisement" must be public, for the purposes of the enhancement under USSG §2G2.2(b)(5), the "advertisement" in *Stulock* was in the form of an e-mail from the undercover officer to the defendant. While *Stulock* involved a different guideline, the inclusion of e-mails or other individual communications in the definition of "advertising" makes sense in the context of USSG §2G3.1(c)(1).

The government has not found any cases addressing the "advertising to receive" provision in USSG §2G3.1(c)(1). While 18 U.S.C. § 2251(d)(1) contains the language "notice or advertisement," the offense outlined in this statute appears to be the closest match to the "advertising to receive" language in USSG §2G3.1(c)(1).

Congress added the "notice or advertisement" provision to § 2251 in 1986. Pub.L. 99-628, 100 Stat. 3510; H.R. Rep. 99-910 (1986) (legislative history).[1]

---

[1] The legislative history for this provision included the following (with footnotes omitted):

SECTION 2. A[D]VERTISING OFFENSES RELATED TO SEXUAL EXPLOITATION OF CHILDREN

This section creates two new offenses. First, it prohibits anyone from knowingly making, printing or publishing, or causing to be made, printed or published, any notice or advertisement seeking or offering to receive, exchange, buy, produce, display, distribute, or reproduce, any visual depiction, if the production of

6

The Sentencing Commission added the "advertising to receive" provision in 1990. "This amendment inserts a cross reference to §2G2.2 for offenses involving materials which, in fact, depict children to ensure that the penalties for such offenses adequately reflect their seriousness." USSG Appendix C, Amendment 326. The cross-reference includes both offenses involving actual "receiving" of child

---

such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

Second, it prohibits anyone from knowingly making, printing or publishing, or causing to be made, printed or published, any notice or advertisement seeking or offering participation in any act of sexually explicit conduct by or with any minor for the purpose of producing a visual depiction of such conduct. This prohibits a person from advertising that he wishes to participate in sex acts with minors for the purpose of producing visual depictions. It prohibits a child, or an agent for a child, from advertising the child's availability for sex acts for the purpose of producing pornography, and it prohibits a person from advertising to recruit children for sex acts for the purpose of producing pornography.

These offenses are committed when the actor knows or has reason to know that the notice or advertisement will be transported in interstate or foreign commerce or mailed; or the notice or advertisement is transported in interstate or foreign commerce or mailed.

The government must prove that the defendant knew the character of the visual depictions as depicting a minor engaging in sexually explicit conduct but need not prove that the defendant actually knew the person depicted was in fact under 18 years of age or that the depictions violated Federal law.

The advertising of child pornography has been a very serious problem. There are a number of magazines and newsletters which serve to advertise the availability of child pornography or to offer children to participate in sexually explicit conduct. Control of advertising of this type was the first recommendation of the Senate Permanent Subcommittee on Investigations. The advertisement itself need not be a visual depiction, nor it must be obscene for a conviction to be sustained. The Committee believes that this comports with the first amendment.

A recent technological phenomenon, computer 'bulletin boards,' have been discovered to be used to offer pornography for sale or exchange or to advertise the availability of children for sexual exploitation. Use of a computer bulletin boards for such notices, since they are a means of interstate commerce, would also be prohibited by this section.

pornography and offenses involving "advertising to receive" child pornography. USSG §2G3.1(c)(1).

Congress added an advertising provision to 18 U.S.C. § 2252A(a)(3)(B) in 2003, but in this provision, the advertising is not to "receive" child pornography; rather, the alternative "solicits" is included.

Given the timing and content of the advertising provisions in § 2251 and § 2252A, the "advertising to receive" provision in USSG §2G3.1(c)(1) is most logically read in connection with the "notice or advertisement" provision in 18 U.S.C. § 2251(d)(1).

In this case, between April 11 and May 25, 2016, defendant communicated online with an undercover officer who he believed was a 13-year-old girl. (PSIR ¶ 8). On April 11, after defendant asked the undercover profile for a picture, and received an image of a female face, he stated, "But you have to send me a naughty one lol." (PSIR ¶ 10). He stated, "I promise it's just for me. And I need to know you're real and like not a cop lol." (*Id.*). After the profile denied she was a cop, defendant stated, "What? lol I don't think you are, but that's why I want a specific pic. I have to make sure, I'm a teacher and could lose my job and go to jail." (*Id.*). On May 1, defendant stated, "I don't want to push you into doing anything, but I want to see a pic of you naked so bad." (PSIR ¶ 15). He then said, "I think about you when I masturbate." (*Id.*).

Defendant's efforts to get sexually explicit depictions from the 13-year-old girl were not limited to messages. On April 11 and May 1, defendant displayed his penis. (PSIR ¶¶ 9, 12). Defendant masturbated and ejaculated on webcam on April

8

11, April 25, and May 19. (PSIR ¶¶ 9, 13, 16). On all three of these occasions, defendant masturbated on webcam in order to persuade, induce, and entice a person who he believed was a 13-year-old girl to engage in sex acts with him and to produce sexually explicit depictions of herself and send these depictions to him. (PSIR ¶ 8; Plea Agreement at ¶ 8(C)).

Defendant's conduct, including his messages to the undercover profile, his displaying his penis, and his masturbating on webcam, constituted "advertising to receive material involving the sexual exploitation of a minor." The cross-reference in USSG §2G3.1(c)(1) to USSG §2G2.2 should be applied.

### III. THE CROSS-REFERENCE UNDER USSG §2G2.2(c)(1) SHOULD BE APPLIED

USSG §2G2.2(c)(1) states:

If the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, apply §2G2.1 (Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material; Custodian Permitting Minor to Engage in Sexually Explicit Conduct; Advertisement for Minors to Engage in Production), if the resulting offense level is greater than that determined above.

The Sentencing Commission added this cross-reference in 1990. USSG Appendix C, Amendment 325. This cross-reference uses the words "notice or advertisement," but the notice or advertisement must be for more than receipt of child pornography; it must be for "a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct."

This cross-reference also should be applied. On three separate occasions, defendant masturbated on webcam in order to persuade, induce, and entice a person who he believed was a 13-year-old girl to engage in sex acts with him and to produce sexually explicit depictions of herself and send these depictions to him. (PSIR ¶ 8; Plea Agreement at ¶ 8(C)).

IV. **THE COURT SHOULD IMPOSE THE PROPOSED SPECIAL CONDITION OF SUPERVISED RELEASE PROHIBITING DEFENDANT FROM USING AND POSSESSING ALCOHOL AND FROM ENTERING BARS OR TAVERNS**

Defendant argues that the Court should not impose the special condition of supervised release in paragraph 91 of the PSIR, which prohibits him from using or possessing alcohol or entering bars or taverns without the prior permission of the probation office. (Defendant's Objections to PSIR at 3). This special condition is appropriate in this case.

The Eighth Circuit generally upholds alcohol bans "for defendants with substance-abuse problems," but the court's "reviews of special conditions imposing complete bans on alcohol have yielded mixed results." *United States v. Simons*, 614 F.3d 475, 480 (8th Cir. 2010). "'In general, we have upheld such bans for defendants with substance-abuse problems,' but have reversed 'where the defendant's history or crime of conviction did not support a complete ban on alcohol.'" *United States v. Forde*, 664 F.3d 1219, 1222 (8th Cir. 2012) (quoting *Simons*, 614 F.3d at 480). The district court "abuses its discretion by imposing a total alcohol ban in circumstances where the record evidence does not support such a restriction." *United States v. Behler*, 187 F.3d 772, 779 (8th Cir. 1999).

10

In *United States v. Bass*, 121 F.3d 1218 (8th Cir. 1997), the court vacated a prohibition on alcohol use by a defendant who admitted to smoking marijuana twice a week and drinking alcohol on weekends. *Id.* at 1224-25. It stated there was no evidence the defendant was "drug dependent." *Id.* at 1224.

In *United States v. Walters*, 643 F.3d 1077 (8th Cir. 2011), the court vacated a special condition prohibiting the defendant from consuming alcohol and entering bars and similar establishments. *Id.* at 1080. It noted the presentence report indicated that "Walters ceased using all illicit substances years prior to the hearing and that he only lightly consumes alcohol." *Id.* The court stated that "nothing in the record suggests that Walters is 'drug dependent' and would replace an addiction to illicit substances with an addiction to alcohol." *Id.* (citing *Bass*, 121 F.3d at 1224-25).

In *Forde*, the court upheld a special condition prohibiting defendant Toliver, a social drinker and daily user of marijuana, "from entering bars, taverns, or other establishments whose primary source of income is derived from the sale of alcohol." 664 F.3d at 1222-23. The *Forde* court explained that "*Bass* predates the Supreme Court's series of sentencing cases emphasizing a sentencing court's broad discretion in crafting an individualized sentence." *Id.* at 1223 (citing *Gall v. United States*, 552 U.S. 38 (2007)). The court also addressed the issue of cross-addiction:

> . . . since *Bass*, we twice have recognized "that the use of alcohol 'limits a recovering person's ability to maintain a drug-free lifestyle.'" [*United States v.*] *Crose*, 284 F.3d [911,] 913 [(8th Cir. 2002)] (quoting [*United States v.*] *Behler*, 187 F.3d [772,] 779 [(8th Cir. 1999)]). Considering our observations in *Crose* and *Behler*, we determine it was within the district court's discretion to recognize the threat of cross addiction and respond by imposing the ban on alcohol use. "This is consistent with

11

the statutory goals of deterrence and protecting the public from future offenses." *Behler*, 187 F.3d at 779.

*Id.* at 1224.

In *United States v. Mosley*, 672 F.3d 586 (8th Cir. 2012), the court upheld the same special condition prohibiting alcohol use, where the defendant had a "documented history of abusing alcohol and crack cocaine, albeit more than a decade before the offense of conviction." *Id.* at 591. The defendant reported that she had not used drugs for twelve years prior to her arrest, but she was diagnosed with cannabis abuse seven years before her arrest. *Id.* at 588, 591. She also suffered from depression and took antidepressant medications. *Id.* at 591. The court stated, "it was reasonable for the district court to treat Mosley as a recovering drug user, and our cases permit a sentencing court to recognize that 'the use of alcohol limits a recovering person's ability to maintain a drug-free lifestyle.'" *Id.* (quoting *Forde*, 664 F.3d at 1224). The court also found the district court reasonably concluded that the combination of alcohol, the defendant's mental health condition, and antidepressant medications could interfere with the defendant's rehabilitation. *Id.* at 591.

In *United States v. Woodall*, 782 F.3d 383 (8th Cir. 2015), the court vacated a special condition prohibiting the defendant from "consuming alcohol and entering establishments that derive their primary source of income from alcohol sales." *Id.* at 386. The court stated:

> According to *Walters*, Woodall's consumption of one or two beers each month is a light consumption of alcohol. Further, Woodall's consumption of marijuana once every other month does not constitute drug dependence. *See Bass*, 121 F.3d at 1224 (finding that using

12

marijuana "twice per week" did not constitute drug dependence).
Rather, the term "dependence" implies that a person is psychologically
or physiologically reliant on a substance. Therefore, Woodall's use of
marijuana once every other month, while unwise and likely illegal,
comes short of drug dependency. Finally, we realize that Woodall's
suicide attempt and mental health diagnoses weigh in favor of the
alcohol prohibition, as it did in *Mosley*. Nevertheless, the district
court's condition relied predominantly on a factual conclusion of drug
dependency without linking it to another factor such as mental health.

*Id.* at 387.

In *United States v. Brown*, 789 F.3d 932 (8th Cir. 2015), citing *Woodall*, the court vacated the same special conditions:

> At Brown's sentencing hearing, the district court's sole factual findings
> as to Brown's drug and alcohol use were that Brown (1) "void[ed] a
> [urinalysis] that tested positive for marijuana," "was revoked [from
> supervised release] for using marijuana while under supervision," and
> "assert[ed] that he's only used two times in his whole life"; and
> (2) "consumed a half pint of . . . cognac on December 25, 2013, [which]
> was the only time he ever consumed alcohol." The district court
> expressed skepticism that Brown's alcohol and marijuana use were as
> limited as he claimed and likened Brown to an "addict." Brown's
> failure to object to the 500-hour drug treatment program supports the
> district court's skepticism. However, Brown's record does not include
> (1) a drug-related underlying conviction; (2) other drug-related
> charges; (3) prior participation in an outpatient drug program; or
> (4) an extensive history of drug abuse. The record evidence of Brown's
> drug use is even less than the record in Woodall, which we found did
> not support a finding of drug dependence.

*Id.* at 934. The court concluded the district court "did not make sufficient findings on the record so as to ensure that the special condition satisfies the statutory requirements," and it found the district court abused its discretion in imposing the special conditions. *Id.* (citations omitted).

In *United States v. Godfrey*, 863 F.3d 1088 (8th Cir. 2017), the court held the district court did not abuse its discretion in imposing a special condition of

13

Case 6:18-cr-02045-CJW-MAR Document 41 Filed 05/01/19 Page 13 of 17

supervised release prohibiting the defendant from using alcohol or entering bars or taverns. *Id.* at 1100-1102. The court noted that the district court had "found that Godfrey 'has had a history of abusing alcohol' and that '[f]rom age 19 to 26 he consumed a 5th of liquor per week and used marijuana on a weekly basis.'" *Id.* at 1101. The appeals court noted that "Godfrey reported that the only reason that he stopped using marijuana was because he could no longer afford it. In addition, when he did drink in the past, he engaged in significant consumption, unlike the defendants in cases where we vacated special conditions." *Id.* (citations omitted).

In *United States v. Bell*, 915 F.3d 574 (8th Cir. 2019), the court vacated a special condition prohibiting the defendant from consuming alcohol or frequenting establishments where alcoholic beverages were the primary items for sale. *Id.* at 578. The court stated:

> Rather than conducting an individualized inquiry into the circumstances of Bell's alcohol use and drug dependence, the district court cited its general experience with prior offenders. In fact, the court admitted that "there's no indication you do that [drinking and prowling the streets]." Moreover, the court made no finding that Bell is drug dependent and susceptible to cross addiction to alcohol.

*Id.* (citations omitted).

In this case, defendant reported that he first consumed alcohol at the age of 15 and last consumed alcohol at the age of 30. (PSIR ¶ 59). He reported that, on average, he consumed alcohol on a weekly basis. (*Id.*). He reported that, from the age of 17 to his early 20s, he "drank heavily" and noted that, in his early 20s, he "had a problem with his drinking." (*Id.*). Defendant received a deferred judgment for operating while intoxicated in 2011. (PSIR ¶ 40). He stated that he successfully

14

completed treatment and, since that time, has only "occasionally" consumed alcohol "socially." (PSIR ¶ 59).

Defendant reported that he first used marijuana at the age of 16, that he used it once in high school, and that he last used it at the age of 30. (PSIR ¶ 60). He reported that he used marijuana on a daily basis from age 21 to age 26 or 27. (*Id.*). He stated that, after age 26 or 27, he used marijuana "five to ten times a month." (*Id.*) Defendant reported using cocaine "a few times" when he was 24 or 25. (PSIR ¶ 61). He reported using Adderall without a prescription "a few times" in his early 20s, using Xanax without a prescription "a couple of times" within the last couple of years, using psilocybin mushrooms three times, using LSD two times, and using MDMA one time. (*Id.*). Defendant received a deferred judgment for possession of a controlled substance in 2011. (PSIR ¶ 39). While he reported that he completed substance abuse treatment after this offense, defendant continued to use multiple drugs after 2011. (PSIR ¶¶ 60-63).

An individualized inquiry into the facts and circumstances of this case, including defendant's history of alcohol use, his history of drug use, and the threat of cross-addiction, supports the imposition of the condition in paragraph 91 of the PSIR.

V. **IN THE EVENT THE COURT DETERMINES THE CROSS-REFERENCES UNDER USSG §2G3.1(c)(1) and §2G2.2(c)(1) DO NOT APPLY, THE COURT SHOULD IMPOSE AN UPWARD VARIANCE BASED ON THE FACTORS UNDER 18 U.S.C. § 3553(a), AND A DOWNWARD VARIANCE IS NOT APPROPRIATE**

If the Court finds the cross-references under USSG §2G3.1(c)(1) and §2G2.2(c)(1) apply, defendant's advisory guidelines range will be 120 months'

15

imprisonment. (PSIR ¶ 77). In the event that the Court determines the cross-references do not apply, defendant's guidelines range of 27 to 33 months' imprisonment would not be sufficient under 18 U.S.C. § 3553(a), and the Court should impose an upward variance to impose a sentence of 120 months' imprisonment.

Defendant argues he should receive a downward variance and a sentence of time served. (Defendant's Sentencing Brief at 5). He bases this request on the loss of his father, childhood problems, his military and community service, mental health issues, his criminal history, his support system, and his argument that he does not present a risk to the community. (*Id.* at 5-12).

The nature and circumstances of the offense include defendant's masturbation on webcam in order to persuade, induce, and entice a person who he believed was a 13-year-old girl to (1) engage in sex acts with him and (2) to produce sexually explicit depictions of herself and send these depictions to him. (PSIR ¶ 8; Plea Agreement at ¶ 8(C)).

Defendant's history and characteristics include convictions or deferred judgments for operating while intoxicated drug possession, and theft in the fourth degree. (PSIR ¶¶ 39-41). He committed the theft offense after having received at least two deferred judgments for prior offenses. (*Id.*). Defendant's history also includes military service; he reported that, in 2011, he was disciplined for testing positive for marijuana and was honorably discharged. (PSIR ¶ 68). He worked for AmeriCorps for two years and has been employed at various other positions. (PSIR ¶ 69).

Defendant has listed Elizabeth Griffin as a witness. The government anticipates discussing the nature and circumstances of the offense, defendant's history and characteristics, his risk to the community, and other relevant sentencing factors with Ms. Griffin.

Respectfully submitted,

PETER E. DEEGAN, JR.
United States Attorney

By: s/ Mark Tremmel

MARK TREMMEL
Assistant United States Attorney
111 Seventh Avenue SE, Box 1
Cedar Rapids, Iowa 52401
(319) 363-6333 / (319) 363-1990 (fax)
Mark.Tremmel@usdoj.gov

CERTIFICATE OF SERVICE

I certify that I electronically served a copy of the foregoing document to which this certificate is attached to the parties or attorneys of record, shown below, on May 1, 2019.

UNITED STATES ATTORNEY

BY: s/ Mark Tremmel

COPIES TO: Melanie Keiper